UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BARBARA MICHEL, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. 4:20-cv-10885-IT |
| | * | |
| ALEJANDRO MAYORKAS, Secretary, U.S. | * | |
| Department of Homeland Security[*]; | * | |
| DEPARTMENT OF HOMELAND SECURITY; | * | |
| U.S. CITIZENSHIP AND IMMIGRATION | * | |
| SERVICES; MICHAEL J. MCCLEARY, Field | * | |
| Director, U.S. Citizenship and Immigration | * | |
| Services, | * | |
| | * | |
| Defendants. | * | |
| _____ | * | |
| | * | |
| KARINE G. PIERRE BOUCICAUT, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. 1:20-cv-10882-IT |
| | * | |
| ALEJANDRO MAYORKAS, Secretary, U.S. | * | |
| Department of Homeland Security, et al., | * | |
| | * | |
| Defendants. | * | |
| _____ | * | |
| | * | |
| ANA MARISELA DIAZ SANCHEZ, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. 1:20-cv-10922-IT |
| | * | |
| ALEJANDRO MAYORKAS, Secretary, U.S. | * | |
| Department of Homeland Security, et al., | * | |
| | * | |
| Defendants. | * | |
| _____ | * | |

[*] Pursuant to Fed. R. Civ. P. 25(d), Secretary of the U.S. Department of Homeland Security
Alejandro Mayorkas has been substituted for former Acting Secretary of the U.S. Department of
Homeland Security Chad Wolf in each case.

JOSE ANGEL ANDRADE,                          *
                                             *
        Plaintiff,                           *
                                             *
        v.                                   *        Civil No. 1:20-cv-10952-IT
                                             *
ALEJANDRO MAYORKAS, Secretary, U.S.          *
Department of Homeland Security, et al.,     *
                                             *
        Defendants.                          *
_____    *
                                             *
FREDY FRANCISCO FUENTES,                      *
                                             *
        Plaintiff,                           *
                                             *
        v.                                   *        Civil No. 1:20-cv-10978-IT
                                             *
ALEJANDRO MAYORKAS, Secretary, U.S.          *
Department of Homeland Security, et al.,      *
                                             *
        Defendants.                          *
_____    *
                                             *
OSCAR OSMIN CHAVEZ DERAS,                      *
                                             *
        Plaintiff,                           *
                                             *
        v.                                   *        Civil No. 1:20-cv-12004-IT
                                             *
ALEJANDRO MAYORKAS, Secretary, U.S.          *
Department of Homeland Security, et al.,      *
                                             *
        Defendants.                          *
_____    *

## MEMORANDUM AND ORDER

March 2, 2021

TALWANI, D.J.

        Plaintiffs Barbara Michel, Karine Pierre Boucicaut, Ana Diaz Sanchez, Jose Andrade,

Fredy Fuentes, and Oscar Chavez Deras are citizens of Haiti, El Salvador, and Honduras who

have been granted Temporary Protected Status in the United States. Plaintiffs allege that after

being granted Temporary Protected Status, they left the country with authorization from the
Secretary of the Department of Homeland Security ("DHS") and were subsequently paroled back
into the United States. Plaintiffs further allege that they thereafter applied with the United States
Citizenship and Immigration Services ("USCIS"), a sub-agency of DHS, to adjust their
immigration status from Temporary Protected Status to Lawful Permanent Resident but that
USCIS administratively closed their applications on the basis that it lacked jurisdiction over their
cases.

Plaintiffs' complaints, brought under the Administrative Procedure Act ("APA"),
5 U.S.C. §§ 701, *et seq.*, challenge USCIS's closing of Plaintiffs' applications to adjust status for
lack of jurisdiction. Defendants' responses contend that this court lacks subject matter
jurisdiction and that Plaintiffs' applications for adjustment of immigration status may be
presented only to an immigration judge in the Executive Office for Immigration Review
("EOIR"), the sub-agency within the Department of Justice that presides over proceedings to
remove noncitizens from the United States. The court, with the consent of all parties,
consolidated the above-captioned cases for motion practice based on the filings (and
supplemental filings) in Michel v. Wolf et al., 4:20-cv-10885-IT. See Elec. Order, Michel v.
Wolf et al., 4:20-cv-10885-IT (D. Mass. Oct. 6, 2020) ECF No. 31; Elec. Order, Chavez Deras v.
Wolf et al., No. 1:20-cv-12004-IT (D. Mass. Dec. 3, 2020) ECF No. 10.[1]

Pending before the court are Defendants' Motion to Dismiss [#24] and Plaintiff Michel's
Cross Motion for Judgment on the Pleadings [#33]. For the following reasons, Defendants'
Motion to Dismiss [#24] is DENIED and Michel's Cross Motion for Judgment on the Pleadings

---

[1] All further citations to the docket are to Michel v. Wolf et al., No. 4:20-cv-10885-IT (D.
Mass.).

[#33] is GRANTED insofar as she seeks a declaration that USCIS has jurisdiction over her application to adjust status and an order directing USCIS to reopen her application and adjudicate it on the merits.

### I.      Factual Background

Michel is a native and citizen of Haiti who resides in Gardner, Massachusetts. Compl. ¶ 1 [#1]. Michel entered the United States without inspection in January 2002. Id. at ¶ 8. Shortly thereafter, she filed an application for political asylum, the application was denied, and an immigration judge entered a removal order against her in July 2002. Id. at ¶¶ 8-9. After learning about the removal order (which had been entered in absentia), Michel filed a motion to reopen her removal proceedings. Id. at ¶ 9. That motion was denied in October 2002. Id. Despite the removal order, Michel remained in the United States. Id.

In January 2010, following an earthquake in Haiti, the Attorney General designated Haiti under the statute allowing for Temporary Protected Status. Id. at ¶ 10. Temporary Protected Status for Haitian citizens is currently in effect through October 4, 2021. See Continuation of Documentation for Beneficiaries of Temporary Protected Status Designations for El Salvador, Haiti, Nicaragua, Sudan, Honduras, and Nepal, 85 Fed. Reg. 79,208 (Dec. 9, 2020).[2] Michel

---

[2] Between October 2017 and June 2018, DHS announced the termination of Temporary Protected Status for Haiti and five other countries, declaring that the conditions originally warranting Temporary Protected Status in those countries no longer existed or had substantially improved. See Termination of the Designation of Sudan for Temporary Protected Status, 82 Fed. Reg. 47,228 (Oct. 11, 2017); Termination of the Designation of Nicaragua for Temporary Protected Status, 82 Fed. Reg. 59,636 85 (Dec. 15, 2017); Termination of the Designation of Haiti for Temporary Protected Status, 83 Fed. Reg. 2,648 (Jan. 18, 2018); Termination of the Designation of El Salvador for Temporary Protected Status, 83 Fed. Reg. 2,654 (Jan. 18, 2018); Termination of the Designation of Nepal for Temporary Protected Status, 83 Fed. Reg. 23,705 (May 22, 2018); Termination of the Designation of Honduras for Temporary Protected Status, 83 Fed. Reg. 26,074 (Jun. 5, 2018). However, DHS has extended Temporary Protected Status for these six countries through October 4, 2021, "to ensure its continued compliance with the

applied for and was granted Temporary Protected Status and employment authorization in 2010,

allowing her to live and work in the United States legally, and she has maintained valid

Temporary Protected Status through the present. Compl. ¶ 10 [#1].

In 2014, Michel requested, and was granted, advance parole to re-enter the United

States. Id. at ¶ 14. She departed and re-entered the United States three times in 2014 and 2015,

and each time, she was inspected and paroled into the country by the United States Customs and

Border Protection. Id.

In April 2018, Michel married a United States citizen. Id. at ¶ 12. Three months later, she

applied to USCIS to adjust her status based on this family relationship. Id. at ¶ 15. On February

15, 2019, USCIS requested that Michel submit a Form I-212, Application for Permission to

Reapply for Admission into the United States after Deportation or Removal, and a $930 filing

fee. Id. Michel submitted the application and paid the fee in April 2019. Id. at ¶ 16.

On March 27, 2020, USCIS notified Michel that it had approved her Form I-212 but that

it had administratively closed her adjustment application because she was not an "arriving alien"

and USCIS therefore lacked jurisdiction over her case. Id. at ¶ 17. The notice stated that Michel

could not appeal the administrative closure of her adjustment application. Id.

## II.    Standards of Review

"Rule 12(b)(1) is the proper vehicle for challenging a court's subject matter jurisdiction."

Valentin v. Hospital Bella Vista, 254 F.3d 358, 362–63 (1st Cir. 2001). Federal courts are courts

of limited jurisdiction, so federal jurisdiction is never presumed. Viqueira v. First Bank, 140 F.3d

---

preliminary injunction orders" issued in ongoing litigation in the Second and Ninth Circuits. See
Continuation of Documentation for Beneficiaries of Temporary Protected Status Designations
for El Salvador, Haiti, Nicaragua, Sudan, Honduras, and Nepal, 85 Fed. Reg. 79,208 (Dec. 9,
2020).

12, 16 (1st Cir. 1998). The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. Id. A court should treat all well-pleaded facts as true and provide the plaintiff the benefit of all reasonable inferences. Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). Dismissal is appropriate only when the facts alleged in the complaint, taken as true, do not support a finding of federal subject matter jurisdiction. Id. A challenge to the court's subject matter jurisdiction must be addressed before addressing the merits of a case. See Acosta-Ramirez v. Banco Popular de Puerto Rico, 712 F.3d 14, 18 (1st Cir. 2013) ("Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case").

In evaluating a motion to dismiss for failure to state claim, this court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). In ruling on a motion to dismiss, "a judge can mull over 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'" Lydon v. Local 103, Int'l Bhd. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014) (quoting Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008)) (alteration in original).

6

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate when the moving party clearly establishes that no material facts are in dispute and that it is entitled to judgment as a matter of law. See Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 54 (1st Cir. 2006). The facts alleged by the party opposing the motion are accepted as true and construed in the light most favorable to that party. Id.

The fact that the parties have filed cross motions does not alter these general standards; rather the court reviews each party's motion independently, viewing the facts and drawing inferences as required by the applicable standard, and determines, for each side, the appropriate ruling. Cf. Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996) (noting, as to cross-motions for summary judgment, that such motions do not "alter the basic Rule 56 standard" but rather require the court "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed").

### III.    Subject Matter Jurisdiction

Defendants argue that "the Complaint, in essence, is inextricably linked to, and thereby becomes, an improper challenge to the validity of Michel's 2002 final removal order." Mot. to Dismiss 2 [#24] (citing 8 U.S.C. § 1252(g)). In relevant part, § 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law, (statutory or nonstatutory) . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Secretary of Homeland Security] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added).[3] The statute prevents district courts from reviewing certain claims that arise from removal proceedings. Specifically, it applies to the "three discrete actions that the [Secretary] may take in the removal context: [the] 'decision or action' to '*commence* [removal] proceedings, *adjudicate* [removal] cases, or *execute* removal orders.'" Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999) (emphasis in original). See also Jennings v. Rodriguez, 138 S. Ct. 830, 841 (2018).

Defendants attempt to cast Michel's claim as an "indirect attack" on her removal order, arguing that a finding that USCIS rather than an immigration judge has jurisdiction over her application for adjustment of status would somehow "nullify" the removal order. Defs' Mem. 11 [#25]. But Defendants' framing is incorrect. Michel makes a single claim in her Complaint [#1]: that Defendants violated the APA when USCIS improperly closed her adjustment application. A conclusion that USCIS erred in closing her adjustment application for lack of jurisdiction does not vacate the order of removal or otherwise amount to a review of a decision by the Secretary to commence removal proceedings, adjudicate removal cases, or execute removal orders. Accordingly, § 1252(g) does not strip this court of jurisdiction over Michel's APA claim.

### IV.   Merits

#### A.   *Scope of Review*

Turning to the merits, under the APA, federal courts can review an agency's interpretation of a statute. 5 U.S.C. § 706. "The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear

---

[3] The statute references the Attorney General. In 2002, Congress transferred enforcement of immigration laws to the Secretary of Homeland Security ("Secretary") under the Homeland Security Act of 2002, Pub. L. No. 107–296, § 402, 116 Stat. 2135, 2178 (2002).

congressional intent." Chevron, U.S.A., Inc. v. Nat'l Res. Defense Council, Inc., 467 U.S. 837, 843 n.9 (1984). The review of an agency's interpretation of a statute is a two-part analysis. Id. at 842-43. First, the court must determine "whether Congress has directly spoken to the precise question at issue." Id. If so, the inquiry ends, because both the agency and the court "must give effect to the unambiguously expressed intent of Congress." Id. at 843. If, however, "the statute is silent or ambiguous with respect to the specific issue," the court then examines whether the agency's determination is based "on a permissible construction of the statute." Id.

Judicial review of agency regulations is, however, much more deferential. Although an agency may not take a position that contradicts the plaint text of a regulation, see United States v. Coal. for Buzzards Bay, 644 F.3d 26, 33 (1st Cir. 2011), an agency's interpretation of its own regulations is generally "controlling unless 'plainly erroneous or inconsistent with the regulation,'" Auer v. Robbins, 519 U.S. 452, 461 (1997) (quoting Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 359 (1989)). That remains true even if the agency interpretation appears for the first time in a legal brief. Chase Bank USA, N.A. v. McCoy, 562 U.S. 195, 208–09 (2011) ("Because the interpretation the [agency] presents in its brief is consistent with the regulatory text, we need look no further in deciding this case"). However, the court is not required to defer to an agency's interpretation when that interpretation conflicts with a prior interpretation, appears to be "nothing more than a 'convenient litigating position," or is an obvious attempt to rationalize a prior agency action. Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 155 (2012).

B.  Discussion

This case concerns Michel's application to change her status from Temporary Protected Status to Lawful Permanent Resident and poses the question of who has jurisdiction over that

adjustment of status application. The court begins with Michel's Temporary Protected Status; then turns to the general rules for adjustment of status; next considers whether Michel is "placed in removal proceedings" or is an "arriving alien" for purposes of those rules; and, finally, if she is "an arriving alien," determines whether she falls within the narrow exception for arriving aliens.

        1.      <u>Temporary Protected Status</u>

The Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101, *et seq.*, establishes rules for persons who are not citizens or nationals of the United States concerning their immigration status.[4] Immigration status "is a term of art . . . [that] denotes . . . a certain legal standing" to be in the United States. <u>In Re Blancas-Lara</u>, 23 I. & N. Dec. 458, 460 (BIA 2002).

One such status is Temporary Protected Status. Pursuant to the Immigration Act of 1990, Pub. L. No. 101–649, 104 Stat. 4978 (1990), the Secretary, in consultation with the State Department, may designate a country under 8 U.S.C. § 1254a(b) if (1) an armed conflict poses a "serious threat" to the safety of that country's citizens returning home; (2) an environmental disaster has substantially disrupted living conditions; or (3) "extraordinary and temporary conditions" prevent the safe return home of that country's citizens. 8 U.S.C. § 1254a(b). Designation of a country under § 1254a(b) initially lasts for a period of six to eighteen months, but the Secretary may extend it thereafter for as long as the country meets the statutory conditions. <u>Id.</u> Citizens of these countries may apply for Temporary Protected Status, and if Temporary Protected Status is granted, they may obtain employment authorization. <u>Id.</u> §§ 1254a(a). Temporary Protected Status provides only a temporary immigration status;

---

[4] The statute refers to such persons as "aliens." 8 U.S.C. § 1101(a)(3). The court uses the terms "alien," "noncitizen," and "citizen of another country" interchangeably.

however, noncitizens may apply to adjust their status from Temporary Protected Status to Legal Permanent Resident status. See id. § 1254a(f)(4).

        2.      Adjustment of Status

Regulations promulgated by DHS provide that jurisdiction over adjustment applications lies either with USCIS or with "the immigration judge" in EOIR. 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1). 8 C.F.R. § 1245.2(a)(1)(i) provides that "[i]n the case of any alien who has been placed in deportation proceedings or in removal proceedings (other than as an arriving alien), the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file." As to an arriving alien who is placed in removal proceedings, the immigration judge does not have jurisdiction to adjudicate an application for adjustment of status unless certain conditions (discussed below) are met. Id. § 1245.2(a)(1)(ii). Section 245.2 provides that "USCIS has jurisdiction to adjudicate an application for adjustment of status filed by any alien, unless the immigration judge has jurisdiction to adjudicate the application under 8 C.F.R. § 1245.2(a)(1)." Accordingly, USCIS, rather than the immigration judge hearing her removal proceedings, has jurisdiction over Michel's application to adjust her status from Temporary Protected Status to Legal Permanent Resident status if (1) Michel is not an alien "placed in deportation proceedings or in removal proceedings" or (2) Michel is an "arriving alien" who is not subject to the narrow exception discussed below.

        a.      Is Michel "Placed in Removal Proceedings"?

There is no dispute that, in 2002, Michel was placed in removal proceedings, and an immigration judge order her removed. It is USCIS's position that once a noncitizen is in removal proceedings, that individual remains "placed" in such proceedings "even if the proceedings have

been administratively closed or if there is a final order of deportation or removal which has not

yet been executed." Policy Manual, USCIS at Vol. 7, Pt. A, Ch. 3 (last updated Jun. 18, 2020),

https://www.uscis.gov/policy-manual/volume-7-part-a-chapter-3.

The Immigration Act of 1990 states that the Secretary "shall not remove the alien [with

Temporary Protected Status] from the United States *during the period in which such status is in*

*effect*." 8 U.S.C. § 1254a(a)(1)(A) (emphasis added). The statute provides further that "an alien

provided temporary status under this section shall not be detained by the [Secretary] on the basis

of the alien's immigration status in the United States." Id. § 1254(d)(4). The statutory scheme

does not terminate an order of removal for a person in Temporary Protected Status, but the

prohibition on the person's removal or detention during the period when that Temporary

Protected Status is in effect suggests that Congress intended any ongoing removal proceeding

before the immigration judge hearing such proceeding to be temporarily suspended. USCIS's

contention that, during the period in which her Temporary Protected Status is in effect, Michel

nonetheless remains "placed in removal proceedings" before the immigration judge hearing her

removal proceeding seems inconsistent with the statutory scheme.

The parties have not addressed this issue, however, and the court therefore turns to the

alternative basis for USCIS jurisdiction, namely its jurisdiction over adjustment of status

applications for "arriving aliens."

b.      Is Michel an "Arriving Alien"?

Even if Michel remains "placed in removal proceedings" while she holds Temporary

Protected Status, USCIS has jurisdiction over her adjustment of status application if she is "an

arriving alien" (unless the narrow condition for arriving aliens applies). 8 C.F.R.

§ 1245.2(a)(1)(i). Michel contends that she is an "arriving alien" following her travel abroad,

while Defendants assert that Michel remains "an alien who entered the United States without inspection, admission, or parole, and who was subsequently subject to an unexecuted final order of removal issued by the Immigration Court." Defs' Mem. 7 [#25]. Defendants' position conflates "entry" and "status" and misapprehends the differences between admission and parole into the United States.

> i.  Entry, Admission, and Parole

All noncitizens seeking to physically enter the United States must apply and present themselves in person to an immigration officer at a United States port of entry for inspection. 8 U.S.C. § 1225(a). If the immigration official determines that the applicable provisions of the INA have been met—for example where the noncitizen has Legal Permanent Resident status or holds a valid tourist or student visa—the immigration officer may "admit" the noncitizen into the United States. Id. §§ 1101(a)(13)(A), 1225(a). "Admission" is a term of art, defined by the INA as an entry "after inspection and authorization by an immigration officer." Id. § 1101(a)(13)(A). Noncitizens may be denied admission where the immigration official determines that the requirements are not met. Id. § 1225(c). Noncitizens who enter the United States without presenting themselves to an immigration officer are said to have "entered without inspection."

In certain circumstances, a noncitizen may not meet the requirements for admission into the United States but may nevertheless be permitted, at the Secretary's discretion, on a case-by-case basis, to be "paroled" into the United States. Id. § 1182(d)(5)(A). When such parole ends, however, the noncitizen is to be "dealt with in the same manner as that of any other applicant for admission to the United States," id., where an "application for admission" refers "to the application for admission into the United States and not to the application for the issuance of an immigrant or nonimmigrant visa," id. § 1101(a)(4).

ii.    Michel's Status

In contrast to these ways of physically entering the United States, immigration "status" refers to one's legal standing to be in the country, as discussed above. Temporary Protected Status is an immigration status, albeit a temporary one. See 8 U.S. C. § 1254a.

The Immigration Act of 1990 provides that individuals with Temporary Protected Status "may travel abroad with the prior consent of the [Secretary]." Id. § 1254a(f)(3). A technical amendment enacted the following year to ensure that substantive reforms enacted by the act would be "more logical, easier to implement, and fairer for all," see 137 Cong. Rec. 34,791 (1991), provides for return from such authorized travel "in the same immigration status the alien had at the time of departure." Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 ("MTINA") § 304(c), Pub. L. No. 102-232, 105 Stat.1733, 1749 (1991) (codified at 8 U.S.C. § 1254a note). Accordingly, as Michel's "immigration status" when she left for her travel was Temporary Protected Status, she held the same status upon her return.

iii.    Michel's Inspection and Parole into the United States

Defendants are correct that when Michel first applied for advance parole, she was present in the United States without inspection. However, their position that she remained present without inspection following her return to the United States makes no sense.

To be allowed to travel, Michel had to file an "Application for Travel Document, Form I-131." 8 C.F.R. § 223.2 ("applicant must submit an application . . . on the form designated by USCIS"); id. § 106.2 (designating Form I-131 as relevant application); see also USCIS, Form I-131, Application for Travel Document, https://www.uscis.gov/i-131 (last accessed Jan. 15, 2021). When such an application is granted, DHS issues the noncitizen an "Authorization for

Parole of an Alien into the United States, Form I-512L," which allows the noncitizen to present

him- or herself to an immigration for inspection at a port of entry.

> The travel document provided to Temporary Protected Status beneficiaries also specifies:

> In all cases, you are still subject to immigration inspection at a port-of-entry to determine whether you are eligible to come into the United States via the terms of this document. Even if you have previously been granted parole, the Department of Homeland Security retains discretion to deny you parole if the Department determines approving your parole application would not serve the public interest of the United States.

USCIS, Form I-512L [#1-1]. Accordingly, although Michel originally entered the country

without inspection in 2002, she was inspected when she arrived at the border in 2014 and 2015.

> The question of whether, following inspection, Michel is an "arriving alien" turns on

DHS's decision to use "parole" rather than "admission" as the mechanism for a noncitizen with

Temporary Protected Status to return to the United States following travel abroad. Although the

Immigration Act of 1990 authorizes Temporary Protected Status beneficiaries to travel abroad

with the prior consent of the [Secretary]," 8 U.S.C. § 1254a(f)(3), it does not specify the method

by which this is to be accomplished. MTINA contemplated that returning noncitizens with

Temporary Protected Status would be "*admitted* in the same immigration status the alien had at

the time of departure." MTINA, § 304(c)(1)(A)(i) (emphasis added). However, rather than

authorize admission, DHS regulations require noncitizens with Temporary Protected Status to

apply for "advance parole" before leaving the United States. 8 C.F.R. § 244.15 ("Permission to

travel may be granted by the director pursuant to the Service's advance parole provisions").

> Persons paroled into the United States, as well as those who are denied entry at a port of

entry, are referred to as "arriving aliens." Id § 1.2 The term "arriving alien" is defined in DHS

regulations as an alien "who (1) attempted entry at a port of entry but was not admitted, (2) was

interdicted at sea, or (3) was paroled into the United States." Id. In other words, both the person

who presents himself for inspection and is not admitted and the person who is paroled into the United States are treated as if they are inspected but remain outside of the United States at a port of entry. See Leng May Ma v. Barber, 357 U.S. 185, 187 (1958) (articulating the "entry fiction" doctrine, i.e., that immigration parole creates a legal fiction wherein the paroled alien is considered to be standing at the border despite physical entry into the country).

Here, neither Michel nor Defendants argue that Michel was admitted. Rather, the parties agree that Michel left the United States on a grant of advance parole. And once a noncitizen arrives at the border, the DHS regulations do not distinguish between an individual entering on parole and an individual who was granted parole in advance of a departure from the United States. 8 C.F.R. § 212.5.

Underlying Defendants' disagreement with Michel's treatment as an "arriving alien" despite the provisions for inspection and parole appears to be a concern that this determination renders the prior order of removal a nullity. But Michel's treatment on her return as an "arriving alien" who has been paroled into the United States does not itself impact the order of removal.[5] Instead, it means simply that, pursuant to DHS's own procedure, (1) she has been inspected by the immigration officer at the port of entry, and (2) she has been paroled into, but not admitted to, the United States.

In sum, because Michel was "inspected and paroled" within the meaning of the INA, she is an "arriving alien."

---

[5] While Michel's departure from the United States may impact her prior order of removal, that question is not before this court.

16

      c.     Is Michel Subject to the Narrow Exception for an Immigration Judge's Jurisdiction over an "Arriving Alien"?

Under 8 C.F.R. § 1245.2, in the case of an arriving alien who is placed in removal proceedings, the immigration judge does not have jurisdiction to adjudicate any application for adjustment of status filed by the arriving alien unless:

> (A) The alien properly filed the application for adjustment of status with USCIS while the arriving alien was in the United States; (B) The alien departed from and returned to the United States pursuant to the terms of a grant of advance parole to pursue the previously filed application for adjustment of status; (C) The application for adjustment of status was denied by USCIS; and (D) DHS placed the arriving alien in removal proceedings either upon the arriving alien's return to the United States pursuant to the grant of advance parole or after USCIS denied the application.

This narrow exception does not apply here, where Michel was not granted advance parole for the purpose of pursuing a previously filed application for adjustment of status, where USCIS has not yet considered her adjustment of status application on the merits, and DHS has not placed Michel in removal proceedings.

## V.    Conclusion

In conclusion, the court finds that, having been paroled into the United States based on her Temporary Protected Status, Michel is an "arriving alien" whose application for adjustment of status does not fall within the narrow exception for jurisdiction of an immigration judge over arriving aliens' applications. USCIS therefore has jurisdiction over her application. And because USCIS's decision to close Michel's adjustment application was based on an administrative construction of the INA that runs contrary to congressional intent and to the plain language of the regulation, the court sets aside that decision pursuant to the APA. See 5 U.S.C. § 706 ("The reviewing court shall . . . hold unlawful and set aside agency action . . . not in accordance with law"). The court further orders USCIS to reopen Michel's adjustment application and adjudicate it. See id. ("The reviewing court shall compel agency action unlawfully withheld or

unreasonably delayed"). However, this opinion has no bearing on the merits of Michel's adjustment application, which is commended to the discretion of USCIS. See 8 U.S.C. § 1255.

Accordingly, Defendants' <u>Motion to Dismiss</u> [#24] is DENIED and Michel's <u>Cross Motion for Judgment on the Pleadings</u> [#33] is GRANTED insofar as Michel seeks a declaration that USCIS has jurisdiction over her application to adjust status and must reopen the application and adjudicate it on the merits. The further relief requested in Michel's <u>Complaint</u> [#1] is denied.

This decision governs the outcome of the pending motions in the six above-captioned cases. Consequently, Defendants' pending motions to dismiss[6] are DENIED, and Plaintiffs' pending motions[7] are GRANTED to the extent that the court declares that USCIS has jurisdiction over the Plaintiffs' applications to adjust immigration status and orders USCIS to reopen the applications and adjudicate them on the merits.

IT IS SO ORDERED.

March 2, 2021                        /s/ Indira Talwani
                                     United States District Judge

---

[6] Mot. to Dismiss, <u>Pierre Boucicaut v. Wolf et al.</u>, 1:20-cv-10822-IT (D. Mass. Aug. 14, 2020) ECF 15; Mot. to Dismiss, <u>Diaz Sanchez v. Wolf et al.</u>, 1:20-cv-10922-IT (D. Mass. Aug. 14, 2020) ECF 14; Mot. to Dismiss, <u>Andrade v. Wolf et al.</u>, 1:20-cv-10952-IT (D. Mass. Sept. 25, 2020) ECF 21; and Mot. to Dismiss, <u>Fuentes v. Wolf et al.</u>, 1:20-cv-10978-IT (D. Mass. Aug. 27, 2020) ECF 16.

[7] Mot. for Summ. J., <u>Michel v. Wolf et al.</u>, 4:20-cv-10885-IT (D. Mass. Sept. 15, 2020) ECF No. 17; and Mot. for Summ. J., <u>Andrade v. Wolf et al.</u>, 1:20-cv-10952-IT (D. Mass. Sept. 14, 2020) ECF 14.